936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lawrence J. STOCKLER and Phillip J. Goodman, Plaintiffs-Appellants,
v.
CITY OF DETROIT, Mediation Tribunal Ass'n., and Kaye Tertzag
Defendants-Appellees.
 No. 90-1793.
 United States Court of Appeals, Sixth Circuit.
 July 8, 1991.
 
 Before KEITH and BOGGS, Circuit Judges, and BERTELSMAN, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiffs Lawrence J. Stockler ("Stockler") and Phillip J. Goodman ("Goodman") (collectively "plaintiffs") appeal from the July 3, 1990, order dismissing their civil rights action against the City of Detroit (the "City"), the Mediation Tribunal Association (the "Association"), and Judge Kaye Tertzag ("Judge Tertzag") and assessing sanctions against the plaintiffs. For the following reasons, we AFFIRM the dismissal but REVERSE the award of sanctions.
 
 I.
 
 2
 This case is the latest in a series of suits concerning the property rights over the real property and the 18,000 square foot building that was located at 201 East McNichols in the City of Detroit. The property was owned by Albert Semaan ("Semaan"). Stockler is the holder of a lien against the assets of Semaan. Goodman is the receiver of the assets of Semaan. The State of Michigan asserted that it acquired the property in a tax foreclosure sale. On November 27, 1985, the City acquired the property from the State of Michigan. On May 9, 1986, the City took emergency measures under a Detroit ordinance to have the building removed because the building was extensively fire damaged and structurally unsafe.
 
 
 3
 In the first suit ("Stockler I "), filed in the United States District Court for the Eastern District of Michigan on January 12, 1988, Stockler and Goodman's predecessor alleged that the City did not have proper title to the property. They alleged that the property was still controlled by Goodman, but that the City had improperly claimed the property through a tax foreclosure sale and improperly torn down the building. They further alleged that the demolition of the building violated the Detroit Building Code (the "Code") because they did not receive advance notice of the demolition. The complaint alleged inverse condemnation and pendant state claims of trespass and conversion. The inverse condemnation count alleged that the City's actions constituted a wrongful taking of property without just compensation (the "takings" claim) and without due process of law (the "due process" claim). The City responded that plaintiffs had failed to allege a cause of action upon which relief could be granted and that the claims were barred for failure to exhaust state statutory remedies and other state remedies. The district court ruled that plaintiffs had failed to pursue adequate state postdeprivation remedies for inverse condemnation and dismissed the case.
 
 
 4
 Plaintiffs appealed to this court. In an unpublished per curiam opinion, we affirmed the determination of the district court. Stockler v. City of Detroit, No. 88-2203, (6th Cir. Sept. 25, 1989). We held that the takings claim was not actionable if the state had provided an adequate posttaking remedy, following Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). Stockler v. City of Detroit, No. 88-2203, at 3. We noted that the Michigan Supreme Court had held that an inverse condemnation action was available in Michigan under the state constitution. Id. We held that the due process claim was similarly precluded by the opportunity for a state postdeprivation remedy, following the Supreme Court in Parratt v. Taylor, 451 U.S. 527 (1981). See Williamson, 473 U.S. at 195 & n. 14, 197.
 
 
 5
 After our decision in Stockler I, plaintiffs filed suit in Wayne County Circuit Court alleging inverse condemnation, trespass, and conversion (Stockler II ). Stockler II progressed through pretrial procedures, including submission of plaintiffs' claims and defenses to a panel of mediators assembled under the auspices of the Mediation Association. Michigan Court Rule 2.403 provides for submission of claims for money damages for evaluation by a panel of three attorneys. The mediators evaluate the value of the claim. If a party rejects the mediators' evaluation, the case proceeds to trial. A rejecting party, however, may be subject to the payment of the other party's costs, including attorney fees, unless the verdict is more favorable to the rejecting party than the mediation evaluation. Mich.Ct.R. 2.403(O)(1).
 
 
 6
 Plaintiffs failed to appear at the initial mediation in Stockler II. The claim was resolved in their absence for $10,000. The trial court set aside the initial mediation evaluation at plaintiffs' request. A hearing before a second mediation panel was held on February 28, 1990. This hearing resulted in the mediators unanimously evaluating the case at $0. Plaintiffs again moved to have the mediation evaluation set aside. They argued that the neutral mediator committed error when he raised an issue sua sponte which led to an evaluation of zero worth. Plaintiffs' motion was denied on March 23, 1990.
 
 
 7
 On May 3, 1990, the instant case was filed in the Eastern District of Michigan (Stockler III ). Stocker II was still pending in state court at the time. The case against the City remained substantially the same as the case in the earlier actions. Plaintiff further alleged, however, that the conduct of Stockler II indicated that the remedy available in state court was not adequate. Plaintiffs alleged that the Association denied them a right to a fair trial and due process. Plaintiffs' brief also alleges that the mediation system is an unconstitutional delegation of authority by the Michigan Supreme Court. The state trial judge in Stockler II, Judge Tertzag, was also named as a defendant.
 
 
 8
 On June 28, 1990, Judge Tertzag filed a motion to dismiss the instant action. The Association also filed a motion to dismiss. The district court entered an order dismissing the Association, Judge Tertzag, and the City.
 
 
 9
 On July 17, 1990, plaintiffs filed a timely notice of appeal to this Court. On October 16, 1990, Judge Tertzag was dismissed from this appeal upon stipulation of the parties.
 
 
 10
 At oral argument, plaintiffs' counsel informed the Court that during the pendency of this appeal, Stockler II was dismissed from state court after plaintiffs failed to appear on the date of trial. Plaintiffs had informed the state court that their lawyer, a sole practitioner, had another trial on the date Stockler II was scheduled, but a motion for continuance was denied. Plaintiffs filed an emergency appeal with the Michigan Court of Appeals which was denied for lack of merit. Plaintiffs sought to go directly to the Michigan Supreme Court, but were informed that they must seek a rehearing from the Michigan Court of Appeal prior to seeking Michigan Supreme Court review.
 
 II.
 A.
 
 11
 In summary, this action is a challenge to the procedures in Stockler II. Plaintiffs allege that the Stockler II procedures are not an adequate remedy to the allegedly wrongful deprivation of property and, therefore, the loss of the Detroit property was without due process and without just compensation. There are two components to this challenge. The first component argues that the original taking of the property by the City was without due process and that plaintiffs are entitled to compensation. The second component challenges the procedures under which plaintiffs must seek relief for the first component. Plaintiffs concede that they were told by this Court in Stockler I that they must first utilize the state court proceedings for inverse condemnation before they could argue the first component in federal court. That decision was in part based on the conclusion of this Court that the state inverse condemnation proceeding was an adequate postdeprivation remedy for the wrongs alleged in the first component of this challenge. The second component of plaintiffs' challenge is an allegation that plaintiffs' experience in Stockler II, after our decision in Stockler I, proves that the state proceedings are not an adequate postdeprivation remedy which must be utilized before the first component of the challenge can be brought in federal court.
 
 
 12
 Plaintiffs did not wait for the completion of Stockler II or to complete an appeal of Stockler II in state court before they urged a federal court to conclude that Michigan's inverse condemnation proceedings are inadequate. Instead, plaintiffs have brought this third action in the middle of the state proceedings for a determination that those incomplete proceedings are inadequate.
 
 
 13
 This case is complicated by its interwoven procedural history and the convergence of similar doctrines discussing the proper interrelation of the federal and state courts. Our affirmance of dismissal in Stockler I was based on ripeness. The district court in the instant case, Stockler III, dismissed the action under the doctrine of abstention established in Younger v. Harris, 401 U.S. 37 (1971). The court declined to exercise its jurisdiction to issue a declaratory judgment declaring the case in progress in state court, Stockler II, constitutionally lacking due process. We find the district court properly applied abstention to dismiss the case rather than entertain injunctive or declaratory relief against the Stockler II state proceeding. This was the proper resolution of the request for equitable relief. We also find that dismissal of the challenge for damages--the challenge alleging the same claims seeking compensation for the Detroit property because of taking without just compensation or due process alleged in Stockler I and Stockler II--was proper because of ripeness and res judicata.
 
 B.
 
 14
 We review an exercise of Younger abstention de novo. Traughber v. Beauchane, 760 F.2d 673, 676 (6th Cir.1985). The principles of Younger abstention dictate that federal courts do not unnecessarily interject themselves into state civil or criminal court proceedings by issuing an injunction or declaratory judgment against those proceedings. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431-32 (1982); Lamb Enter. Inc. v. Kiroff, 549 F.2d 1052, 1056-57 (6th Cir.), cert. denied, 431 U.S. 968 (1977). Where a party seeks a declaratory judgment or injunction against an ongoing state civil judicial proceeding, Younger abstention is required if the proceedings implicate an important state interest and there is an adequate opportunity in the state proceedings to present the party's federal claims. See Middlesex, 457 U.S. at 432.
 
 1.
 
 15
 Plaintiffs have not argued that the inverse condemnation proceedings in this case do not implicate important state interests. We find that such interests are clearly implicated. Lower courts have held unanimously since 1975 that eminent domain actions implicate important state interests sufficient to require application of the Younger doctrine. Duty Free Shop, Inc. v. Administracion de Terrenos, 889 F.2d 1181, 1182 (1st Cir.1989). An inverse condemnation action is an eminent domain action that takes place after the alleged taking. Thus, the prong of the Younger test that requires an important state interest is met.
 
 2.
 
 16
 Once it is established that important state interests are implicated in a federal action for declaratory judgment against a state judicial proceeding, the only remaining question is whether Stockler has an adequate forum in the state case, Stockler II, to raise his federal constitutional claims. This question, as part of the Younger analysis, only looks at whether the judicial proceeding would consider the federal claims. Middlesex, 457 U.S. at 435-36. It is distinct from the similar question of adequacy raised in the ripeness analysis. See infra p. 9.
 
 
 17
 Plaintiffs do not dispute that federal constitutional claims can be raised in Michigan state court. The Michigan courts are courts of general jurisdiction which can hear federal claims as well as state claims. See Lester v. Sheriff of Oakland County, 84 Mich.App. 689, 695, 270 N.W.2d 493, 495 (1978); People v. Kamischke, 3 Mich.App. 236, 241, 142 N.W.2d 21, 24 (1966). Thus, the adequate state forum prong is also met.
 
 3.
 
 18
 Younger abstention has an exception which will allow a federal court not to abstain despite meeting the above test if there is a showing of bad faith, harassment, or some other extraordinary circumstance. Middlesex, 457 U.S. at 435. Plaintiffs do not argue that this exception to Younger applies. In any event, we find no evidence of such extraordinary circumstances. Our review indicates that while it is arguable whether the mediation system attacked in this case denies due process, it does not appear that plaintiffs are being persecuted by the state system. Thus, the exception to Younger does not apply to the instant case.
 
 
 19
 We conclude that the district court properly dismissed the allegations seeking declaratory judgment. The Michigan state proceedings in Stockler II constituted a judicial proceeding in which Michigan had an important state interest and where plaintiffs could raise their federal claims. The requirements of Younger abstention were, therefore, met and abstention from the declaratory judgment action was required.
 
 C.
 
 20
 Plaintiffs seek in this action not only a declaratory judgment against the state proceeding, but also damages for the property now claimed by, and in part destroyed by, the City. We will therefore clarify our holding in Stockler I which followed the dictates of the United States Supreme Court in Williamson County Regional Planning Comm. v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). Where a state has an inverse condemnation procedure that is not facially unavailable or inadequate, a challenge of a state taking under the takings clause is not ripe for federal court review "until [a party] has utilized that procedure...." Williamson County Regional Planning Comm. v. Hamilton Bank of Johnson City, 473 U.S. 172, 197 (1985).
 
 1.
 
 21
 We interpret the phrase "utilized that procedure" to require not only a filing for relief under the procedure, but completion of the entire process available for compensation through the final appeal. Part of the state's procedure for inverse condemnation is that it is a state claim for damages which is appealable in the ordinary course of civil litigation appeals. See Hart v. City of Detroit, 416 Mich. 488, 331 N.W.2d 438 (1982) (Michigan inverse condemnation action appealed to the Michigan Supreme Court). Until all appeals have been taken, a federal court cannot know whether the state would provide just compensation.[1] It is this doubt that makes the case not ripe. Only when the appellate process is complete is it clear whether and to what extent the state will compensate.
 
 
 22
 In Williamson, the Supreme Court noted that the ripeness analysis in takings cases is analogous to completion of an adequate postdeprivation remedy in a due process challenge to an unauthorized government official's act under Parratt. Williamson, 473 U.S. at 195. We have found that the availability of appeals is relevant to the determination of adequacy of state procedures in the context of a due process challenge addressed by Parratt. Campbell v. Shearer, 732 F.2d 531, 533 (6th Cir.1984). The need to know the result of state proceedings through all appeals applies equally to the claims under the takings clause as to those under the due process clause. Therefore, the fact that plaintiffs started a state court inverse condemnation case, or even received an appealable decision from a trial court, is not sufficient to meet the requirement that they "utilized" the system. They must utilize the system until a decision is reached in a final appeal before the dispute is ripe for a federal court.
 
 2.
 
 23
 Plaintiffs focus their argument on their claim that the Michigan state procedure for inverse condemnation is inadequate. This claim seems to misunderstand the nature of the ripeness inquiry into the adequacy of the state proceeding. This inquiry is only a facial examination of the procedures established by the state and how they are generally applied. It is without regard to how they are applied in a particular case. The Supreme Court identified this examination specifically as a facial one. MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 351 (1986). Plaintiffs do not dispute that Michigan entertains inverse condemnation actions. To the extent that their claim can be construed to allege that the inverse condemnation actions are not adequate, we determined in Stockler II that the Michigan procedures were adequate based on Hart v. City of Detroit, 416 Mich. 488, 331 N.W.2d 438 (1982). Stockler I, slip op. at 3. That decision is binding on us under the doctrines of stare decisis and collateral estoppel. See 6th Cir.R. 24(c). Any claims that in practice the procedures have not been applied fairly do not go to whether there is an "available and adequate" remedy but whether the state has justly compensated for any taking that may have occurred. These issues must wait until after the state procedure has been fully "utilized."
 
 
 24
 We conclude that the damages claims were properly dismissed. The facial adequacy of state procedures for the purpose of ripeness has already been determined in Stockler I. Under the doctrine of res judicata, it cannot be reexamined in the instant case.
 
 D.
 
 25
 The district court awarded the Association $500 in attorney fees from plaintiffs as a sanction under Rule 11. Fed.R.Civ.P. 11. We review the decision to award sanctions under Rule 11 for an abuse of discretion. Cooter & Gell v. Hartmarx Corp., 110 S.Ct. 2447, 2459 (1990). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. See In re Bendectin Litigation, 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989). Upon a full review of the record, we conclude that while this is a close case, it was improper to award fees. While the district court speculated that the complaint was filed to harass, it is clear to us that a reasonable inquiry was conducted and that, to the best of the signer's knowledge, it was well grounded in fact and was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Fed.R.Civ.P. 11. Rather than resulting from an improper purpose to harass, we are convinced the appeal was an effort out of frustration with perceived unfairness in the state system to seek protection in the federal courts. The federal courts had told the plaintiffs that federal adjudication was unavailable if they had an adequate state remedy. Feeling bogged down in state court, they concluded that they had tried the remedy and, in trying, had proved what they knew all along--that they could not get a fair hearing in state court. Armed with their new proof, they again sought access to federal court.
 
 
 26
 We have concluded that a combination of the Younger doctrine and the Williamson and Parratt doctrines does not permit the access plaintiffs seek. Nonetheless, we are convinced that they reasonably pursued their claim, even though we deem it without merit.
 
 III.
 
 27
 Under the dictates of Younger, a federal trial court cannot interfere in a state judicial proceeding unless the criteria of the narrow exception set out in Younger are met. Plaintiffs' recourse is to conduct a full appeal through the state system. If at the conclusion of all appeals plaintiffs are convinced that they have been denied due process or have not been adequately compensated, their remedy for these alleged constitutional violations is to seek certiorari to the United States Supreme Court. See Duty Free Shop, 889 F.2d at 1183. The Supreme Court may grant certiorari and provide federal court adjudication of this dispute. While it is true that the Supreme Court may choose not to grant certiorari, it is also true that the doctrines established by that Court do not permit an alternative short cut to federal court. We, therefore, AFFIRM the dismissal of this case by the Honorable Robert E. DeMascio, Senior United States District Judge for the Eastern District of Michigan. We, however, REVERSE the award of sanctions.
 
 
 
 *
 The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 We note the distinction between this requirement for ripeness and a requirement of exhaustion of administrative remedies. The ripeness requirement originates out of the nature of the just compensation right. The constitutional violation does not occur upon the taking of property. The violation only occurs if the property is taken and there is no subsequent just compensation. Thus the finalizing of the state compensation procedures is part of the substance of the constitutional violation. This is distinct from a completed constitutional violation for which the state provides an opportunity to seek redress. In that context, under the doctrine of Patsy v. Florida Bd. of Regents, 457 U.S. 496 (1982), a claimant does not have to exhaust those procedures before bringing a federal 42 U.S.C. Sec. 1983 action. Williamson, 473 U.S. at 194 n. 13