60 F.3d 828
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 MILLINGTON HOMES INVESTORS, LTD., Plaintiff-Appellant,
v.
CITY OF MILLINGTON, TENNESSEE, Defendant-Appellee.
 No. 94-5482.
 United States Court of Appeals, Sixth Circuit.
 July 3, 1995.
 
 On Appeal from the United States District Court, for the Western District of Tennessee, No. 93-02636; Odell Horton, District Judge.
 W.D.Tenn.
 REVERSED.
 Before: MILBURN and SILER, Circuit Judges; and COOK,* Chief District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Plaintiff Millington Homes Investors, Ltd. appeals the district court's judgment dismissing for lack of ripeness its 42 U.S.C. Sec. 1983 action for deprivation of property without due process of law. On appeal, the issues are (1) whether this case should be dismissed under abstention principles, and (2) whether the district court erred in dismissing the case upon finding that the issues were not ripe for adjudication. For the reasons that follow, we reverse and remand.
 
 I.
 A.
 
 2
 In 1985, plaintiff Millington Homes Investors, Ltd. ("Millington Homes") acquired two adjoining tracts of land, containing 53 acres, in Millington, Tennessee. The two tracts had been zoned for residential use in 1948 and 1949, and a total of 459 residential units had been constructed on the adjoining properties. Free-standing duplexes, designed to allow for later conversion for single-family use, were built on a portion of the property. At the time that Millington Homes bought the tracts, the property was zoned as "medium-density residential." This classification allowed for the conversion of the duplexes into single-family homes.
 
 
 3
 In 1986, defendant City of Millington, Tennessee, ("the City") enacted a new comprehensive city-wide zoning ordinance pursuant to which the two tracts owned by Millington Homes were re-zoned as "light industrial." Under the light industrial classification, the tracts could not be converted from multi-family use to single-family use. Moreover, no additional multi-family homes could be built, and the existing homes could not be structurally altered or reconstructed in the event that the property was damaged. Thus, the 1986 re-zoning had a tremendously adverse affect on the use and value of plaintiff's property.
 
 
 4
 Before the City enacted the 1986 zoning ordinance, it published a notice of a hearing regarding the re-zoning in a local newspaper, the Millington Star. However, Millington Homes, which is headquartered in California, did not receive notice of the hearing. In 1990, Millington Homes began the process of refinancing the debt secured on the two tracts of land. During the course of this refinancing, the City advised Millington Homes' first mortgage holder, Federal Home Loan Mortgage Corporation ("FHLMC") that the tracts were still zoned residential. In reliance on the City's assurance of the property's zoning classification, Millington Homes and its first and second mortgagees proceeded with the refinancing, which was consummated in 1991.
 
 
 5
 In April 1993, Millington Homes, still unaware of the re-zoning, entered into a contract to sell all of the remaining duplexes on one of the tracts for conversion to single-family homes. Soon thereafter, Millington Homes was advised of the 1986 re-zoning and that it would not be permitted to develop single-family residences on the property. In response, Millington Homes requested, before both the Millington Planning Commission and the Board of Mayor and Aldermen of the City of Millington, that the zoning classification of the property be returned to residential, but all requests were denied.
 
 B.
 
 6
 Plaintiff Millington Homes Investors, Ltd. commenced this action against defendant City of Millington, Tennessee, on July 16, 1993. In its complaint, plaintiff alleged that the City's re-zoning ordinance violated its rights to procedural and substantive due process as protected by the Fourteenth Amendment of the Constitution of the United States, and constituted a taking of property in violation of the Just Compensation Clause of the Fifth Amendment. The complaint also set forth supplemental claims for relief under the Tennessee Constitution and Tennessee inverse condemnation statutes. Plaintiff sought to have the ordinance declared invalid or to enjoin the City from enforcing the ordinance against it. Plaintiff also sought monetary damages.
 
 
 7
 On August 31, 1993, the City filed a motion to dismiss the case pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) on the grounds that the issues presented in plaintiff's complaint were not ripe for adjudication and that plaintiff failed to allege sufficient facts to support a violation of the United States Constitution. The district court granted defendant's motion on October 14, 1993; however, the district court treated the motion as one for summary judgment although neither party had submitted affidavits or other evidence. In its order granting defendant's motion to dismiss, the district court found that although the City did not provide adequate notice as required by the Due Process Clause of the Fourteenth Amendment, plaintiff's claims for violation of procedural and substantive due process and for an unconstitutional taking were not ripe for adjudication because plaintiff had failed to utilize Tennessee inverse condemnation statutes. The district court also dismissed plaintiff's state law claims.
 
 
 8
 On October 25, 1993, pursuant to Fed. R. Civ. P. 59, plaintiff filed a motion to alter or amend the district court's judgment dismissing plaintiff's claims on the grounds that (1) the district court applied the wrong standard of review by treating the motion as one for summary judgment, and (2) the district court erred in determining that plaintiff's due process claims were not ripe for review. In its order of February 15, 1994 granting plaintiff's motion, the district court held that it had improperly treated defendant's motion to dismiss as one for summary judgment instead of one for failure to state a claim under Fed. R. Civ. P. 12(b)(6). However, the district court sustained the dismissal after concluding that plaintiff's claims were not ripe for adjudication because of the availability of the Tennessee inverse condemnation statutes and because plaintiff had not alleged that these statutes did not provide an adequate remedy. Plaintiff filed a timely notice of appeal on March 14, 1994. On March 31, 1994, plaintiff filed an action in the Circuit Court of Tennessee for the Thirtieth Judicial Circuit, in Memphis, Tennessee, setting forth the same claims as in the present case.
 
 II.
 A.
 
 9
 Defendant argues that the Younger doctrine requires this court to abstain from exercising jurisdiction over this appeal because plaintiff has filed a similar action in a Tennessee state court. As we explained in Watts v. Burkhart, 854 F.2d 839 (6th Cir. 1988), the Younger doctrine states that "in light of [the Supreme Court's] concern with principles of comity and federalism[,]" "in cases seeking to enjoin ongoing state criminal proceedings, federal courts should not exercise jurisdiction but instead should dismiss the cases in their entirety." Watts, 854 F.2d at 844 (citing Younger v. Harris, 401 U.S. 37 (1971)) (emphasis added).
 
 
 10
 The Supreme Court has also applied the Younger doctrine in certain civil cases. See Huffman v. Pursue Ltd., 420 U.S. 592 (1975); Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423 (1982). In Middlesex County, the Court held that three factors must be present in order to invoke the Younger doctrine in the civil context. "First, there must be ongoing state proceedings which are judicial in nature. Second, those proceedings involve an important state interest. And, third, the state proceedings must afford the federal plaintiff a reasonable opportunity to raise his federal constitutional claims." Litteral v. Bach, 869 F.2d 297, 299 (6th Cir. 1989) (per curiam) (citing Middlesex County, 457 U.S. at 432)).
 
 
 11
 In this case, plaintiff seeks to enjoin defendant from applying its zoning ordinance to plaintiff because plaintiff allegedly did not have adequate notice of the rezoning. As earlier stated, plaintiff filed a similar action in a Tennessee state court after the district court dismissed plaintiff's case for lack of ripeness. Plaintiff asserts that it filed a complaint in state court for the same claims as it put forth in this case to avoid statute of limitations problems should the district court's dismissal of its case be affirmed; however, plaintiff states that it prefers to litigate this matter in federal court and will dismiss its state court action if this court finds that plaintiff's claims are ripe for adjudication. Moreover, plaintiff's counsel unequivocally stated at oral argument that plaintiff had abandoned its Fifth Amendment takings claim in both its federal and state court actions. Defendant argues that by filing actions for the same claims both in federal court and Tennessee state court, plaintiff is seeking "to litigate the same claims in both state and federal court or to obtain the functional equivalent of an injunction or declaratory judgement in this forum that the State Court Action (which [plaintiff] filed after the dismissal of this action below) should not proceed." Defendant's Motion to Dismiss Appeal at 6.[1] We disagree.
 
 
 12
 Younger and its progeny have been applied in cases in which a federal court is asked to enjoin state court proceedings. In this case, plaintiff does not seek to enjoin ongoing state court proceedings; rather, plaintiff filed the same claims in federal and state court. The Supreme Court has noted that "federal courts and state courts often find themselves exercising concurrent jurisdiction over the same subject matter, and when that happens a federal court generally need neither abstain (i.e., dismiss the case before it) nor defer to the state proceedings (i.e., withhold action until the state proceedings have concluded)." Growe v. Emison, 113 S. Ct. 1075, 1080 (1993). Furthermore, "federal courts have an interest in the orderly functioning of the federal judicial system and in the preservation and exercise of their jurisdiction." Polykoff v. Collins, 816 F.2d 1326, 1333 (9th Cir. 1987). "[P]rinciples of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court." Town of Lockport v. Citizens for Community Action at the Local Level, Inc., 430 U.S. 259, 264 n.8 (1977). See also Ankenbrandt v. Richards, 112 S. Ct. 2206, 2215 (1992) ("Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them."') (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). Accordingly, because plaintiff does not seek to enjoin an ongoing state proceeding, we conclude that this case does not require abstention.
 
 
 13
 Defendant also argued for the first time at oral argument that the principles of judicial economy set forth in Colorado River also require this court to dismiss this appeal. In Colorado River, the Supreme Court stated that "there are principles ... which govern in situations involving the contemporaneous exercise of concurrent jurisdictions." Colorado River, 424 U.S. at 817. "These principles rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."' Id. (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)). "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction ...."' Id. (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). The Court further explained that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." Id. at 818. As earlier stated, plaintiff has abandoned its Fifth Amendment takings claim in both of its federal and state court actions. Accordingly, we conclude that principles of judicial economy and comprehensive disposition of litigation do not require this court to dismiss this appeal. Thus, we turn to the merits of plaintiff's appeal.
 
 B.
 
 14
 Plaintiff argues that the district court erred in dismissing its case upon finding that plaintiff's claims of procedural and substantive due process violations were not ripe for adjudication. Specifically, plaintiff asserts that the district court erred in finding that plaintiff failed to allege a violation of the Due Process Clause because plaintiff failed to assert that Tennessee law did not provide adequate post-deprivation remedies. Thus, plaintiff argues that the district court improperly applied the ripeness requirements for a constitutional takings claim to plaintiff's procedural and substantive due process claims.
 
 
 15
 We review a district court's grant of motion to dismiss under Fed. R. Civ. P. 12(b)(6) de novo. Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, 498 U.S. 867 (1990). This court has explained:
 
 
 16
 A motion under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint. The basic requirements for a pleading are set out in Rule 8(a) and call for "a short and plain statement of the claim showing that the pleader is entitled to relief...." In considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint. The court must deny the motion to dismiss unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.
 
 
 17
 Nishiyama v. Dickson County, Tenn., 814 F.2d 277, 279 (6th Cir. 1987) (en banc) (citations omitted).
 
 
 18
 In concluding that plaintiff must allege that Tennessee's post-deprivation remedies were inadequate in order to state a claim for due process violations arising from the City's re-zoning ordinance, the district court relied on Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds, 474 U.S. 327 (1986). In Parratt, the Court considered whether an inmate stated an adequate claim for violation of his procedural due process rights when he alleged that a package containing hobby materials had been lost as a result of prison officials' failure to follow official procedure for receipt of mail. The Court held that the plaintiff had failed to state a claim for a violation of his due process rights because he did not allege the inadequacy of state remedies. In so holding, the Court reasoned that in situations in which predeprivation due process is not feasible, because swift action is required or because the injury is caused by random and unauthorized action by a state official, postdeprivation remedies are sufficient to due process. Parratt, 451 U.S. at 539. Thus, we have stated that "[t]he touchstone of the Parratt rule is the impossibility or impracticability of providing predeprivation process combined with provisions for adequate postdeprivation process." Harris v. City of Akron, 20 F.3d 1396, 1401 (6th Cir. 1994). Furthermore, in Mackey v. Dyke, 29 F.3d 1086 (6th Cir. 1994), we explained:
 
 
 19
 Parratt does not require dismissal of all Sec. 1983 actions where the state provides a postdeprivation process for remedying the alleged deprivation. The Supreme Court explained the limitations on Parratt in Zinermon v. Burch, 494 U.S. 113 (1990), stating that the Parratt doctrine will defeat a procedural due process claim only if: (1) the deprivation was unpredictable or "random"; (2) predeprivation process was impossible; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty. 494 U.S. at 136-39.... The controlling inquiry is whether the state was in a position to provide for predeprivation process. Hudson v. Palmer, 468 U.S. 517, 534 (1984).
 
 
 20
 Mackey, 29 F.3d at 1093 (parallel citations omitted). Therefore, Parratt is "clearly inapplicable 'where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized conduct."' Watts, 854 F.2d at 843 (quoting Hudson, 468 U.S. at 532). See also Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982); City of Akron, 20 F.3d at 1402; Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991).
 
 
 21
 In this case, plaintiff claims that it was deprived of its constitutional right to procedural due process when defendant did not provide adequate notice of the hearing it held regarding the re-zoning ordinance. Thus, "the gravamen of [plaintiff's] complaint is that the state procedure itself deprived [plaintiff] of its property without due process." Macene, 951 F.2d a 706. Therefore, we conclude that this case does not fall within the parameters of the Parratt rule, and the district court erred in relying on Parratt.
 
 
 22
 Plaintiff argues, relying on Nasierowski Bros. Inv. Co. v. City of Sterling Heights, 949 F.2d 890 (6th Cir. 1991), that its procedural due process claim is ripe for adjudication. In Nasierowski, a landowner brought an action under 42 U.S.C. Sec. 1983, alleging that "he was deprived of procedural due process when he was not accorded a public hearing at which to challenge the reclassification of the zone in which his property was situated." Nasierowski, 949 F.2d at 893. In that case, the plaintiff did not put forth a takings claim and relied solely on his claim for procedural due process. In holding that the plaintiff's procedural due process claim was ripe for adjudication, we held that "a procedural due process claim is instantly cognizable in federal court without requiring a final decision on the proposed development from the responsible municipal agency." Id. at 894. We explained this holding as follows:
 
 
 23
 Conceptually, in the case of a procedural due process claim, "the allegedly infirm process is an injury in itself," whereas in the context of a takings claim, the alleged injury--a diminution in property value--cannot be assessed with any degree of certainty until the municipality arrives at a final decision as to how the property owner will be permitted to develop his property.
 
 
 24
 Nasierowski, 949 F.2d at 894 (quoting Hammond v. Baldwin, 866 F.2d 172, 176 (6th Cir. 1989)). Thus, we concluded that a plaintiff alleging a procedural due process violation is not required to meet the same ripeness requirements as those required for a takings claim, i.e., requiring the plaintiff to seek a variance from the appropriate local regulatory body and allege the inadequacy of post-deprivation relief. Id. at 893. See Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186-95 (1985).
 
 
 25
 However, defendant argues that plaintiff's procedural due process claim is not ripe because it is ancillary to plaintiff's takings claim and thus subject to the same ripeness requirements. Defendant relies on Bigelow v. Michigan Dept. of Natural Resources, 970 F.2d 154 (6th Cir. 1992). In Bigelow, commercial fishermen brought claims for taking without just compensation and denial of due process when the State of Michigan supported a plan pursuant to which Indians were given exclusive rights to fish in certain Michigan waters. In that case, we held that the plaintiffs' procedural due process claim was subject to the same ripeness requirements as their takings claim because "[t]he plaintiffs' procedural due process claim is ancillary to [their takings claim]." Bigelow, 970 F.2d at 160. We explained:
 
 
 26
 Until the state courts have ruled on the plaintiffs' inverse condemnation claim, this court cannot determine whether a taking has occurred, and thus cannot address the procedural due process claim with a full understanding of the relevant facts. Furthermore, addressing the plaintiffs' procedural due process claim at this stage of the proceedings would allow future plaintiffs effectively to circumvent the ripeness requirement for takings claim simply by attaching a procedural due process claim to their complaint.
 
 
 27
 Id. Thus, we distinguished Nasierowski on the basis that Bigelow "does not present a pure claim of procedural due process, but instead involves several constitutional claims." Bigelow, 970 F.2d at 159. Furthermore, we noted that "[s]tanding alone, the plaintiffs' procedural due process claim might be ripe for review." Id.
 
 
 28
 In this case, the district court dismissed plaintiff's claims for an unconstitutional taking and for denial of due process upon finding that these claims were not ripe for review. Plaintiff only appeals the dismissal of its procedural and substantive due process claims. Moreover, in its reply brief, plaintiff states that it has "abandoned" its takings claim. Plaintiffs' Reply Brief at 1. Thus, this case "comes to us as a 'pure due process case,' not as one in which the due process claims are ancillary to any other claim." City of Akron, 20 F.3d at 1403 (distinguishing Bigelow when a party does not appeal the dismissal of its takings claim).
 
 
 29
 Moreover, in a zoning ordinance case involving issues similar to those raised in this case, this court has held that a district court may consider a due process claim brought by a plaintiff who also raises a takings claim that is not ripe. See Bigelow, 970 F.2d at 159 (noting that ripeness requirements for just compensation claims "do not apply to procedural due process challenges to a zoning ordinance") (emphasis in original) (citing Seguin v. City of Sterling Heights, 968 F.2d 584, 589 (6th Cir. 1992)). In Seguin, landowners brought an action against the City of Sterling Heights alleging that the City's re-zoning practices deprived plaintiffs of their rights to due process, equal protection, and just compensation. In that case, the plaintiffs challenged a state law that requires publication of a notice of a public hearing before commencing a public hearing regarding a new zoning ordinance. The plaintiffs claimed that they were denied due process because they did not receive adequate notice under state law. In Seguin, we held that the plaintiffs' due process claim was ripe, and not subject to ripeness requirements for a takings claims. We explained:
 
 
 30
 in the instant case, the plaintiffs' injury occurred when the City Council passed the zoning ordinance. It was at that time that the plaintiffs were first subjected to procedures which they claimed violated the Due Process Clause. More specifically, plaintiffs contend that the notice-by-publication requirement, as prescribed by statute, did not comport with due process. Rather, they argue that personal notice should be required under the present circumstances. We agree that this is the type of injury that is instantly cognizable in federal court, regardless of whether the city has reached a final decision on the merits of their claim.
 
 
 31
 Seguin, 968 F.2d at 589 (internal citation omitted). Therefore, we conclude that the district court erred in finding that plaintiff's procedural due process claim was not ripe for adjudication.
 
 
 32
 Plaintiff also argues that the district court erred in finding that its substantive due process claim was not ripe for adjudication. In Pearson v. City of Grand Blanc, 961 F.2d 1211 (6th Cir. 1992), we addressed the issue of whether there are any ripeness requirements for substantive due process claims in zoning cases. In holding that there are not, we stated that "the very existence of an allegedly unlawful zoning action, without more, makes a substantive due process claim ripe for federal adjudication." Pearson, 961 F.2d at 1215. See also Triomphe Investors v. City of Northwood, 49 F.3d 198, 201 n.2 (6th Cir. 1995). Therefore, we conclude that the district court also erred in finding that plaintiff's substantive due process claim was not ripe for adjudication.
 
 
 33
 Finally, plaintiff argues that defendant violated its right to procedural due process by failing to provide plaintiff actual notice of the public hearing held before the City re-zoned plaintiff's property. On the other hand, the City argues that it provided all the process that was due by publishing notice of the hearing in a local newspaper. This issue is not properly before this court, however, because it goes to the merits of plaintiff's procedural due process claim and not whether the district court erred in finding that this claim was not ripe for adjudication.[2] See Watts, 854 F.2d at 844 n.3; Lanier v. American Bd. of Endodontics, 843 F.2d 901, 911 (6th Cir.), cert. denied, 488 U.S. 926 (1988). Accordingly, we will not address the merits of plaintiff's procedural due process claim.
 
 III.
 
 34
 For the reasons stated, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Julian A. Cook, Jr., Chief District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defendant also mistakenly relies on our unpublished decision in Stockler v. City of Detroit, No. 90-1793, 1991 WL 120394 (6th Cir. July 8, 1991) (per curiam). In Stockler, we held that the district court "properly applied abstention to dismiss the case rather than entertain injunctive or declaratory relief against the ... state proceeding." Stockler, 1991 WL 120394 at * 3. Unlike the plaintiff in Stockler, in this case plaintiff is not challenging the adequacy of state proceedings. Thus, Stockler is inapposite to this case
 
 
 [2]
 Although the district court originally found, in its order granting defendant's motion to dismiss dated October 14, 1993, that the City's notice by publication of its re-zoning failed to satisfy the notice requirement of the Fourteenth Amendment, J.A. 15, the district court did not restate this finding in its order granting plaintiff's motion to alter or amend the judgment dated February 15, 1994, in which the district court "reiterate[d] its basis for dismissal in this order." J.A. 20. Furthermore, in its order granting plaintiff's motion to alter or amend the judgment, the district court stated that plaintiff's procedural due process claim was not ripe "even if plaintiff suffered a deprivation of his property." J.A. 20. Therefore, the district court dismissed plaintiff's procedural due process claim for lack of ripeness and did not reach the merits of plaintiff's procedural due process claim