**Ernest J. SZABO, Jr., et al., Plaintiffs,**

v.

**CGU INTERNATIONAL INSURANCE, PLC, Defendant.**

**Case No. C–3–01–242.**

United States District Court, S.D. Ohio, Western Division.

Feb. 19, 2002.

Kenneth Ignozzi, Dayton, OH, for Plaintiffs.

Lauri Nicholson, Bruce Allman, Cincinnati, OH, for Defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR ORDER OF ABSTENTION (DOC. # 10–1); DEFENDANT'S MOTION, IN THE ALTERNATIVE, TO STAY PROCEEDINGS (DOC. # 10–2) OVERRULED

RICE, Chief Judge.

The present litigation is a suit for uninsured and underinsured motorist coverage, pursuant to Ohio Rev.Code §§ 2721.01 through 2721.15. On May 28, 1999, Ashleigh Szabo was a passenger in an automobile owned and driven by her cousin, Celeste Kline. Ms. Kline was involved in a single-car accident, during which Ashleigh suffered a significant brain stem injury, which has left her permanently paralyzed. Ashleigh's father, Plaintiff Ernest J. Sza-

bo, Jr., is an employee of Reed Elsevier, Inc., doing business as Lexis–Nexis, in Dayton, Ohio. At the time of the automobile accident, Reed Elsevier allegedly had a commercial automobile liability insurance policy and/or a general commercial liability insurance policy and/or an umbrella insurance policy ("Global Liability Policy") with Defendant CGU International Insurance, PLC ("CGU").[1] Plaintiff alleges that this policy contains a provision for uninsured/underinsured motorist coverage, or that the policy contains such coverage by operation of Ohio law. CGU has failed and refuses to make payments to Ashleigh Szabo under the terms of its insurance policy.

Consequently, on May 18, 2001, Ernest Szabo, as guardian for Ashleigh, brought suit against CGU in the Montgomery County Court of Common Pleas, seeking uninsured/underinsured motorist coverage, pursuant to the terms of the policy, Ohio Rev.Code § 3937.18, and Ohio law. (Doc. # 1). Ashleigh's parents, Ernest and Marsha Szabo, and her brother, Brenton Szabo (collectively "the Szabos"), have also asserted claims for uninsured/underinsured motorist coverage, based on loss of consortium (*id.*).

On May 22, 2001, CGU filed suit in the High Court of Justice, Queen's Bench Division, Commercial Court in London, England, against the Szabos, Reed International PLC, and Reed Elsevier, Inc. In that lawsuit, CGU is seeking a declaration that none of the Szabos is an insured under the policy and that it is not liable to them, pursuant to the insurance policy or otherwise (Doc. # 10, Ex. 1).

Pending before the Court is Defendant's Motion for Order of Abstention (Doc. # 10–1) or, in the Alternative, an Order Staying Proceedings (Doc. # 10–2). For the reasons assigned, Defendant's Motion for Order of Abstention is OVERRULED. Its Motion, in the alternative, to Stay Proceedings is likewise OVERRULED.

The Supreme Court has repeatedly stated that "abstention from jurisdiction is the exception, not the rule, and that federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.' " *Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635 (6th Cir. 1990) (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). "[P]rinciples of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in state court." *Town of Lockport v. Citizens for Community Action at the Local Level, Inc.*, 430 U.S. 259, 264 n. 8, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977); *Millington Homes Investors, Ltd. v. City of Millington*, 1995 WL 394143, 60 F.3d 828 (6th Cir.1995). Under the abstention doctrine set forth in *Colorado River, supra,*[2] "considerations of

---

1. In its Stipulation of Facts (Doc. # 15), Defendant indicates that Lexis Nexis is a division of Reed Elsevier, Inc. Reed Elsevier, Inc., is a wholly-owned indirect subsidiary of Reed International PLC and Elsevier NV (*id.*). In its Motion, Defendant indicates that Plaintiffs are trying to recover on CGU's Global Liability Policy, number UQ154P15906, issued to Reed International.

2. The Supreme Court has defined three additional categories of cases in which abstention may be appropriate: (1) where the resolution of uncertain state law issues could render the federal constitutional issue moot or cause it to be presented in a different posture (*Pullman* abstention), see *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941); (2) where federal review of the state law question in a case and in similar cases would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern (*Burford* abstention), *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); and (3) where review would unduly interfere with legitimate activities of the state, such as pending state criminal, civil or administrative pro-

judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339–40 (6th Cir.1998). The principles underlying this doctrine "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Id.* However, "[a]bdication of the obligation to decide cases can be justified . . . only in the exceptional circumstances where . . . [it] would clearly serve an important countervailing [state] interest." *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236. The same principles which govern parallel state and federal court proceedings apply to parallel proceedings in a foreign court. *AAR Internat'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir.2001) ("we apply the same general principles [concerning parallel state proceedings] with respect to parallel proceedings in a foreign court in the interests of international comity.").

▇ In determining whether to abstain from exercising jurisdiction under *Colorado River*, in the interest of international comity, the Court must engage in a two-step analysis. *First*, the Court must evaluate whether the two proceedings are, in fact, parallel. If the actions are not parallel, the doctrine does not apply. *Second*, if parallel, the Court must balance the eight factors set forth in *Colorado River* and its progeny.

### A. Parallel Proceedings

▇ Turning to the first step, for two concurrent actions to be parallel, it is not necessary for them to be identical. *Romine*, 160 F.3d at 340. It is sufficient that the two proceedings are substantially similar. *Id.; AAR Internat'l*, 250 F.3d at 518.

The presence of additional parties or additional claims will not necessarily preclude a finding that the actions are parallel. *Romine*, 160 F.3d at 340. "If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties." *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir.1985) (quoted by *Romine*, 160 F.3d at 340). "The question is not whether the suits are formally symmetrical, but whether there is a 'substantial likelihood' that the foreign litigation 'will dispose of all claims presented in the federal case.' " *AAR Internat'l*, 250 F.3d at 518 (citation omitted). As long as the parties are substantially similar and the claims "are predicated on the same allegations as to the same material facts," the actions are to be considered parallel. *Romine*, 160 F.3d at 340.

▇ Under the present circumstances, this litigation and the action in the Queen's Bench Court are substantially similar. Both lawsuits arise out of the automobile accident that resulted in severe injuries to Ashleigh Szabo. The action before this Court is brought by the Szabos against Defendant CGU and seeks a determination that Plaintiffs are insureds within the meaning of the Global Liability Policy, pursuant to Ohio law. Using the flip side of the same coin, the Queen's Bench Court action is brought by CGU, seeking a declaratory judgment that the Szabos are not insureds within the meaning of the Global Liability Policy, on the ground that English law applies. Thus, both lawsuits revolve around the same central issues, to wit: (1) which law governs the CGU policy, and (2) whether the Szabos are covered by its terms, according to the governing law. Although CGU has also named Reed International PLC and Reed Elsevier, Inc.,

---

ceedings (*Younger* abstention), *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d

669. None of these three doctrines is relevant to the situation herein.

as defendants in its action, their presence in the English litigation does not render that lawsuit dissimilar, since both CGU and the Szabos are parties to both actions. Accordingly, the Court concludes that the two actions are parallel.

## B. Balancing of Factors

■■■■ Having determined that this action and the English lawsuit are parallel, the Court turns to whether it should abstain from exercising jurisdiction over this litigation. In deciding whether this Court should defer to the foreign court, the Court must consider and balance eight factors, to wit: (1) whether the foreign court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was retained; (5) the source of the governing law; (6) the adequacy of the foreign court action to protect the federal plaintiff's rights; (7) the relative progress of the two proceedings; and (8) the presence or absence of concurrent jurisdiction. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir.2001). These eight factors should not be applied mechanically but, rather, should be carefully balanced in light of the circumstances of the case, "with the balance weighted heavily in favor of the exercise of jurisdiction." *Id.* at 206–7; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■■■■ Under the present circumstances, the factors strongly favor this Court retaining jurisdiction over the lawsuit. The lawsuit does not involve any res. Thus, the first factor is inapposite and favors exercising jurisdiction. The second factor relates to geographic considerations, not to the relative jurisdictional scopes of the forums. *PaineWebber*, 276 F.3d at 207. CGU's action was filed in London, England, a substantial distance from the Southern District of Ohio. Litigation in England would likely be very inconvenient for Plaintiffs, who are residents of Ohio. Although Defendant is a British company, it issues global insurance policies and, thus, is likely better able to conduct international litigation. At the very least, the federal forum is not a less convenient for CGU than the English court is for Plaintiffs. Thus, the second factor favors retaining jurisdiction or, at the very least, is neutral.

Litigation in this Court would provide complete relief to both parties. Plaintiff has argued that it is entitled to underinsured motorist coverage under Ohio law, pursuant to the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999), and its progeny. If the Court were to conclude that Ohio law applied, this Court would apply such law to determine whether Plaintiff was an insured within the meaning of the Global Liability Policy. Thus, Plaintiff could be accorded complete relief. If, on the other hand, the Court were to conclude that English law applied and that a *Scott–Pontzer* claim did not exist, CGU would receive the result it desired. Thus, litigation in this Court would not result in piecemeal litigation.

In contrast, the suit proceeding in the Queen's Bench Court has been limited to a determination whether the policy is governed by English law and, if so, whether the Szabos are entitled to underinsured motorist benefits under that law. As noted by the Honorable Mr. Justice Toulson in his Approved Judgment, should the British court rule that the policy is governed by Ohio law, CGU's action in that venue would come to an end. Mr. Justice Toulson specifically declined to allow CGU to raise the issue of CGU's liability to the Szabos under Ohio law. Rather, he stated

that, in light of the fact that concurrent litigation was proceeding in Ohio, resolution of matters of Ohio law should be dealt with by the Ohio court. In light of Mr. Justice Toulson's ruling, the third factor strongly favors retaining jurisdiction.

The order in which the courts obtained jurisdiction has little impact on this Court's analysis. Plaintiffs filed suit in the Montgomery County Court of Common Pleas on May 18, 2001. CGU filed its lawsuit merely four days later. This minimal temporal difference between the filing of the two actions is insignificant, particularly in light of the fact that neither lawsuit has progressed beyond jurisdictional motions. *See PaineWebber,* 276 F.3d at 207; *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 21, 103 S.Ct. 927 (19–day difference between the filing of lawsuits in state and federal courts was immaterial, given the absence of progress in the state court proceedings but substantial actions taken in federal court). The fourth factor favors retaining jurisdiction or is, at best for Defendant, neutral.

With regard to the fifth factor, the source of the governing law is unclear. Plaintiff asserts that Ohio law applies, while Defendant asserts English law governs. Because the issue of the governing law has yet to be resolved, this factor supports retaining jurisdiction.

There is no indication that the British litigation is an action inadequate to protect the federal plaintiff's rights. This case involves a contractual dispute, not one "involving the application of legal rights or principles unique to, or specially protected by, federal law." *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.,* 180 F.3d 896, 900 (7th Cir.1999). Thus, the central issues could be resolved ably by the Queen's Bench Court. There is also no suggestion that the English court lacks adequate procedural safeguards. In addition, the English court has concluded that it has jurisdiction over Plaintiffs in that forum and, thus, the litigation may proceed therein. Thus, these factors favor abstention.

Turning to the relative progress of the two proceedings, the Court finds no reason to abstain. Both this litigation and the English action are in their preliminary stages. Neither court has addressed the substantive issues before it, *i.e.,* which law governs the policy and whether Plaintiffs are insureds. In light of the facts that Mr. Justice Toulson has indicated that he would not interpret Ohio law in the action before him and that neither court has addressed the choice of law issue, this factor strongly favors continuing to exercise jurisdiction.

Upon balancing the above factors, the Court concludes that it must continue to exercise jurisdiction over this lawsuit. At present, neither the litigation in this nor the Queen's Bench Court has progressed beyond early jurisdictional motions. There has been no determination by either court as to the proper law to apply. Most significantly, the Queen's Bench Court has indicated that it will *not* determine CGU's liability under the Global Liability Policy, in the event that the court determines that the policy is governed by Ohio, not English, law. Thus, should the English court conclude that English law is not applicable, this Court *alone* would address that issue. None of the additional factors *strongly* favor abstention. As such, the Court cannot find that exceptional circumstances exist that justify the surrendering of jurisdiction properly invoked. Accordingly, the Court will not abstain from exercising jurisdiction over the present litigation. Defendant's Motion for Order of Abstention (Doc. # 10–1) is OVERRULED.

■ Turning to Defendant's Motion, in the alternative, to Stay these Proceedings (Doc. # 10–2), the above factors likewise

do not support a stay of the instant litigation. As stated, *supra,* the litigation in the Queen's Bench Court has not yet resolved any substantive issues. Presumably, any discovery that is conducted between Plaintiffs and Defendant for this litigation would be applicable to the English lawsuit. Moreover, should this or the English court conclude that CGU's insurance policy is governed by Ohio law, the resolution of CGU's liability to Plaintiffs will proceed in this Court only. Accordingly, the Court sees no reason to stay the progress of this litigation, at this early juncture. Defendant's Motion to Stay Proceedings (Doc. # 10–2) is OVERRULED.

For the foregoing reasons, Defendant's Motion for Order of Abstention (Doc. # 10–1) is OVERRULED. Its Motion to Stay Proceedings (Doc. # 10–2) is likewise OVERRULED.