*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0269a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RICHARD F. DAVET,

　　　　　　　*Plaintiff-Appellant,*

　　*v.*

CITY OF CLEVELAND, ROBERT VILKAS and CITY OF
CLEVELAND DEPARTMENT OF BUILDING &
HOUSING,

　　　　　　　*Defendants-Appellees.*

No. 05-3832

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-01623—John M. Manos, District Judge.

Submitted: April 19, 2006

Decided and Filed: August 1, 2006

Before: BOGGS, Chief Judge; SUTTON, Circuit Judge; SCHWARZER, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** David P. Bertsch, BUCKINGHAM, DOOLITTLE & BURROUGHS, Akron, Ohio, Walter A. Lucas, BUCKINGHAM, DOOLITTLE & BURROUGHS, Cleveland, Ohio, for Appellant. Michael F. Cosgrove, CITY OF CLEVELAND LAW DEPARTMENT, Cleveland, Ohio, for Appellees.

---

## AMENDED OPINION

---

SUTTON, Circuit Judge. In 2003, the City of Cleveland condemned, then partially demolished, a building owned by Richard Davet. In response, Davet filed a lawsuit in state court against the city and several other defendants, alleging that the demolition violated the Takings, the Due Process and the Equal Protection Clauses of the United States Constitution. The defendants filed a counterclaim seeking an injunction (compelling Davet to remedy the code violations or complete the demolition) and over $16,000 in damages for the cost of the partial demolition. The

---

[*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

defendants removed the case to federal court and eventually filed a motion for summary judgment. The district court granted the defendants' motion, and Davet appealed. We affirm.

I.

On March 6, 2003, City of Cleveland building inspectors examined a building owned by Richard Davet in Cleveland, Ohio. The inspectors found numerous violations of the Cleveland Building and Housing Code, including "deteriorated" roofing, walls, floor and stairs. As a result, the city posted a condemnation notice on the front door of the building that same day, giving Davet until the following day, March 7, 2003, to remedy the code violations or face the risk that the city would demolish the building. Davet discovered the notice on March 10, 2003, and promptly filed an appeal with the city's Board of Building Standards. The appeal triggered an automatic stay, which prevented the city from demolishing the building until the Board had decided the appeal.

The city, however, asked the Board to lift the automatic stay because the building posed an "immediate peril to life [and/or] property." JA 131–34. The Board agreed and lifted the stay, finding that the building indeed posed an "immediate danger to the community." D. Ct. Op. at 4.

On March 12, 2003, Davet responded by seeking, then receiving, a temporary restraining order from the Court of Common Pleas of Cuyahoga County. The restraining order prevented the city from taking any further action pending a preliminary-injunction hearing. The court held the required hearing the following day but at that point Davet withdrew his injunction request.

On March 14, 2003, the city demolished the front of the building, and that April it filed a counterclaim in state court (which it amended in September 2003) seeking reimbursement for the cost of the partial demolition (roughly $16,000) and an injunction compelling Davet either to fix the rest of the building or to allow the city to demolish it.

On April 23, 2003, and again on May 7, 2003, the Board of Building Standards heard Davet's appeal of the condemnation order. Represented by counsel, Davet testified at the hearings and was given an opportunity to introduce evidence and to present and cross-examine witnesses. On May 7, 2003, the Board upheld the condemnation order and informed Davet of his right to appeal the Board's decision. Davet did not appeal.

After the hearing, the parties tried to resolve the dispute. The city sent Davet's attorney a letter detailing the steps needed to remedy the code violations. Davet responded with a proposal of his own, which the city rejected (in bad faith according to Davet) because it failed to address the issues underlying the condemnation order and the requirements listed in the city's letter. When the city told Davet that it planned to demolish a second portion of the building, Davet sought another temporary restraining order from the Court of Common Pleas of Cuyahoga County. The state court rejected Davet's request, noting that he had failed to show "by clear and convincing evidence that he [was] likely to succeed" in demonstrating that the building did "not pose an immediate peril," that he would suffer "irreparable injury" if no injunction were granted and that "the public interest [would be] served by allowing the building to remain in its [then-current] condition." *Id.* at 6. The city demolished a second portion of the building on June 11.

On July 3, 2003, Davet filed an amended complaint in state court, seeking relief under 42 U.S.C. § 1983 against the city and its chief building official, Robert Vilkas, for violating Davet's equal protection and (substantive and procedural) due process rights. Davet also claimed that the city's actions amounted to a "taking without public purpose and without just compensation." JA 16. The city removed the case to federal court and sought summary judgment on all of Davet's claims.

In granting the city's summary-judgment motion, the district court noted that the administrative hearings before the Board established that the city had properly condemned the

building and that Davet's failure to appeal that conclusion rendered it an "established legal fact" entitled to "preclusive effect." D. Ct. Op. at 11. As a result, the court reasoned, Davet's "argument that the structure posed no danger to the community[] and [that it] did not constitute a public nuisance subject to condemnation" could not be relitigated. *Id.* at 10. Given the state administrative conclusion that the building posed a danger to the community and given the process afforded Davet, the court rejected each of his constitutional claims as a matter of law. Roughly three months later, the court exercised supplemental jurisdiction over the counterclaim (seeking reimbursement of the demolition costs and an injunction compelling Davet to fix the building or to demolish it) and ruled in the city's favor.

## II.

Davet raises three arguments on appeal: (1) the district court erred in granting the city summary judgment on Davet's claims; (2) the district court erred in exercising supplemental jurisdiction over the city's counterclaim; and (3) even if the district court properly retained jurisdiction to hear the counterclaim, it erred in granting the city's motion for summary judgment on that claim. We give fresh review to the district court's summary-judgment decisions, *Harajli v. Huron Twp.*, 365 F.3d 501, 505 (6th Cir. 2004), fresh review to its assessment of the scope of its jurisdiction, *Friends of the Crystal River v. EPA*, 35 F.3d 1073, 1077 (6th Cir. 1994), and abuse-of-discretion review to its decision to exercise supplemental jurisdiction over ancillary state-law claims, *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998).

## A.

In challenging the court's summary disposition of his claims, Davet argues that it incorrectly concluded that he had failed to exhaust his administrative remedies. But that is not what the court did. Because Davet did not appeal the Board's ruling on the validity of the condemnation order, the district court reasoned that the order became final and precluded further argument in a collateral proceeding about whether the structure posed a "danger to the community[] and did not constitute a public nuisance subject to condemnation." D. Ct. Op. at 10–11.

Davet as an initial matter does not challenge that reasoning, and it is not clear how he could. "[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (internal quotation marks, ellipses and citation omitted). Under Ohio law, "*res judicata*, whether claim preclusion or issue preclusion, applies to administrative proceedings that are of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding." *Grava v. Parkman Twp. Bd. of Zoning Appeals*, 653 N.E.2d 226, 228 (Ohio 1995) (internal quotation marks omitted); *see Crow v. City of Springfield*, No. 00-3510, 2001 WL 814938, at *4 (6th Cir. July 12, 2001) ("While it is true that as a general principle, parties may litigate constitutional deprivation claims in federal court regardless of whether they took advantage of a State court or State administrative procedure, . . . that is not the principle being applied in this case. . . . The finding by an administrative body that Crow's property constituted a public nuisance is an established legal fact, which was not appealed. Thus, the district court gave the finding preclusive effect as the finding was an unreviewed final decision of a State administrative body . . . ."); *Flis v. Voinovich*, No. 96-4369, 1998 WL 552865, at *4 (6th Cir. Aug. 13, 1998) (per curiam).

Once the district court established the validity of the condemnation order and the preclusive effect of the Board's ruling on it, the court permissibly addressed and rejected each of Davet's claims as a matter of law: (1) The procedural due process claim failed because the Board had given him ample notice and an opportunity to be heard; (2) the substantive due process claim failed

because he could not establish that the city's actions (taken pursuant to a valid condemnation order and in accordance with the procedures mandated by city and state law) "shock[ed] the conscience" or were "arbitrary and capricious," D. Ct. Op. at 12–13 (internal quotation marks omitted); (3) the equal protection claim failed because he could not establish that demolishing a dangerous building as to this "class of one" (and dilapidated building of one) was an "irrational or arbitrary" act, *id.* at 14–15 (internal quotation marks omitted); and (4) the takings claim failed because "[d]emolition, compliant with local law and procedure, in order to enforce building codes or abate a public nuisance does not constitute a taking as contemplated by the federal and Ohio Constitutions," *id.* at 16; *see Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1022–24 (1992) ("[L]and-use regulation does not effect a taking if it substantially advances legitimate state interests . . . .") (internal quotation marks and brackets omitted); *id.* at 1030 ("[T]he Takings Clause does not require compensation when an owner is barred from putting land to a use that is proscribed by [ ] existing rules or understandings.") (internal quotation marks omitted); *N. Ohio Sign Contractors Ass'n v. City of Lakewood*, 513 N.E.2d 324, 327 (Ohio 1987) ("[T]he constitutional right of the individual to use private property has always been subservient to the public welfare . . . [and] such use is subject to the legitimate exercise of local police power . . . ."). Because the validity of the condemnation order and the condition of the building were the crucial premises underlying each of these conclusions and because the court did not err in giving the Board's decision on those issues preclusive effect, the court properly granted summary judgment to the defendants on Davet's claims.

B.

Davet next argues that the district court lacked jurisdiction to consider the city's counterclaim. In doing so, however, he does not dispute that the district court properly obtained subject-matter jurisdiction over the case when Davet sought relief for violations of his constitutional rights, *see* 28 U.S.C. § 1331; that a district court possesses "supplemental jurisdiction over all other claims that are so related" to the federal-law claims in a case that they "form part of the same case or controversy," *id.* § 1367(a); and that "supplemental jurisdiction 'is a doctrine of discretion'" and that dismissal of ancillary state-law claims when the federal-law claims are no longer part of the case is "not mandatory," *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 551 (6th Cir. 2006).

Having accepted each of these hallmarks of supplemental jurisdiction and having accepted the district court's conclusion that the two sets of claims "form part of the same case or controversy," Davet argues that the district court nonetheless lacked power to review the city's counterclaims. As he sees it, Ohio law grants "exclusive jurisdiction over civil actions to enforce Cleveland building and housing codes" to the "Housing Division of the Cleveland Municipal Court," and a federal district court assuredly does not satisfy this requirement. Davet Br. at 11 (internal quotation marks omitted).

Putting the potential Supremacy Clause problems with this argument to the side for one moment, we think that Davet misreads Ohio law. The relevant provision says:

> [I]f a municipal court has a housing or environmental division, the division has exclusive jurisdiction within the territory of the court in any civil action to enforce any local building, housing, air pollution, sanitation, health, fire, zoning, or safety code, ordinance, or regulation applicable to premises used or intended for use as a place of human habitation, buildings, structures, or any other real property subject to any such code, ordinance, or regulation . . . .

Ohio Rev. Code § 1901.181(A)(1). "[I]f a municipal court has a housing or environmental division," the provision says only that "the division has exclusive jurisdiction *within the territory of the court*," *id.* (emphasis added)—namely, the "municipal court"—not exclusivity vis-à-vis federal courts. Reaching a similar conclusion in a dispute about the exclusive jurisdiction of the

environmental division of a municipal court in relation to an Ohio court of common pleas, the Ohio Supreme Court held that "the 'exclusive jurisdiction' vested in the housing court by [Ohio Revised Code §] 1901.181(A) means exclusive as against the other divisions of the municipal court, but not as against the court of common pleas in cases where a plaintiff has alleged damages of more than $10,000." *State ex rel. McGraw v. Gorman*, 478 N.E.2d 770, 772 (Ohio 1985). If in 1985, according to the Ohio Supreme Court, this provision did not establish exclusive jurisdiction as to other Ohio courts, it would seem to follow that it does not operate to accomplish a more unusual jurisdictional feat—excluding the courts of another sovereign from hearing disputes that that sovereign's laws allow it to hear. While the Ohio legislature in 1997 altered the outcome in *Gorman* by amending Ohio Revised Code § 1901.17 to say that the $15,000 jurisdictional "limit does not apply to the housing division or environmental division of a municipal court," it did nothing to suggest that the Housing Division's jurisdiction was exclusive of federal-court jurisdiction.

But even if that were not the case, we would still construe the law not to bar federal jurisdiction in this instance. If accepted, Davet's construction of § 1901.181(A)—under which only the Housing Division of the Cleveland Municipal Court possessed jurisdiction to hear the city's state-law counterclaim—would present a square conflict between the requirements of § 1901.181(A) and 28 U.S.C. § 1367(a), which gives district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." That conflict is traditionally resolved in favor of the federal legislation under the Supremacy Clause. U.S. Const. art. VI, cl. 2; *see Marshall v. Marshall*, 126 S. Ct. 1735, 1749–50 (2006) (holding that despite purporting to grant exclusive jurisdiction to specialized state probate courts over certain matters, state legislation may not divest a federal court of jurisdiction over a probate-related dispute); *Thompkins v. Stuttgart Sch. Dist. #22*, 787 F.2d 439, 441–42 (8th Cir. 1986) (holding that despite purporting to vest exclusive jurisdiction for the enforcement of a state-law right in a specific state court, state legislation may not preclude a federal court from exercising pendent jurisdiction over claims based on that right); *Markham v. City of Newport News*, 292 F.2d 711, 713 (4th Cir. 1961) ("In determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to acts of states which have no power to enlarge or to contract the federal jurisdiction."); 17 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 4211 (2d ed. 2005) ("A state cannot defeat federal jurisdiction of a matter judicial in nature by confining jurisdiction to a specialized state court . . . .").

The seriousness of the constitutional question posed by Davet's construction of the statute offers a compelling reason to construe the statute narrowly. Just as federal courts construe state "statutes to avoid constitutional difficulty when 'fairly possible,'" *Eubanks v. Wilkinson*, 937 F.2d 1118, 1122 (6th Cir. 1991) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)), so Ohio courts will "construe" their own "statute[s] to save [them] from constitutional infirmities," *State v. Sinito*, 330 N.E.2d 896, 898 (Ohio 1975). *Cf. Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Const. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems . . . ."); *Clark v. Martinez*, 543 U.S. 371, 381–82 (2005) ("[O]ne of the canon[] [of constitutional avoidance's] chief justifications is that it allows courts to *avoid* the decision of constitutional questions. It is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts."). As one interpretation of § 1901.181(A) gives rise to serious constitutional difficulties while the other does not, the provision is best interpreted as vesting jurisdiction in the Housing Division of the Cleveland Municipal Court "exclusive" of other state courts, but not exclusive of a federal court otherwise properly exercising jurisdiction over the case. Section 1901.181(A) does not, in short, pose an impediment to the district court's exercise of supplemental jurisdiction.

## C.

Davet, finally, argues that even if the district court retained jurisdiction over the city's counterclaim, it erred in granting summary judgment to the city because "a material issue of disputed fact" remained "as to whether Davet's [building] continued to pose an imminent threat" once it was partially demolished. Davet Br. at 2–3. This argument, however, ignores the scope of the condemnation order as well as the "preclusive effect" properly given to the Board's ruling that the building warranted condemnation. Contrary to Davet's suggestion, the Board did not limit its application of the condemnation order to the portion of the building that was later demolished. As upheld by the Board, the condemnation order cited violations throughout the structure. *See* JA 121–24 (listing as deteriorated the roof, roof rafters, sheathing, roofing, walls (load bearing and non-load bearing as well as interior and exterior), wall studs, floors, floor deck, beams, openings, plaster, trim and moulding, stairs, stringers, risers, treads, enclosure walls, and plumbing, heating and electrical equipment). The Board's ruling that the entire building warranted demolition precludes Davet from arguing that once part of the building was demolished, the remainder of the structure was no longer subject to the condemnation order.

## III.

For these reasons, we affirm.