NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 14a0506n.06

No. 13-4300

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| EMBASSY REALTY INVESTMENTS, INC., JOHN BARNES, JR., and CAPTAIN BUFFALO FOODS, INC., | ) ) ) ) | **FILED**<br>Jul 10, 2014<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs – Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| CITY OF CLEVELAND, EDWARD RYBKA, RONALD J. O'LEARY, JOSEPH DENK, SR., DAVID COOPER, PETER STEWART, JOHN DOES 1-10, and TIMOTHY WOLOSZ, | ) ) ) ) ) | |
| Defendants – Appellees. | ) | |

**BEFORE: SUHRHEINRICH, MOORE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiffs brought this 42 U.S.C. § 1983 action alleging that the City of Cleveland and various City officials violated their substantive due process and Fourth Amendment rights, and that the City's demolition of their commercial property constituted a taking without just compensation under the Fifth Amendment. The district court granted summary judgment. We AFFIRM.

**I**

Plaintiffs are Embassy Realty Investments, Inc. (Embassy Realty), John Barnes (Barnes), and Captain Buffalo Foods (Captain Buffalo). Embassy Realty is an Ohio Corporation and titled owner of the commercial property located at 3902 Lee Road, Cleveland, Ohio (Property). Barnes is a shareholder of Embassy and obtained the Property from non-party Southeast

1

Cleveland Church of Christ, Inc. (Church), in 2005. Barnes owned the Property from October 2005 until December 2008, when he transferred it to Embassy. Barnes owns and operates Captain Buffalo and had intended to open a coffee house at the Property.

On July 13, 1998, while the Property was still owned by the Church, the City's Department of Building and Housing[1] issued a notice of violation of housing ordinances for the property. On July 14, 1998, a judicial search warrant issued to enter, search and inspect the Property for ordinance violations and "conditions which are, or may become hazardous to the general public and which may be violations of the Building and Housing Code and the Health Code of the City of Cleveland."

The Church was served with notice of the condemnation of the property.[2] The Church did not appeal the condemnation notice[3] and the City took no further action on the condemnation notice until 2007. The notice was not recorded and the Church did not provide notice of the condemnation to Barnes.[4] Because the notice was not recorded and the City had not acted on it, Barnes was unaware of the condemnation when he did his title search.

Based on an inspection of the Property on January 8, 2007, the Department of Building and Housing issued a second notice for building code violations at the Property on January 10,

---

[1] Cleveland's Department of Community Development, Division of Building and Housing.

[2] The commercial condemnation violation notice stated:

DUE TO DETERIORATION SET FORTH HEREIN, THIS STRUCTURE SHALL BE EFFECTIVELY BOARDED IN ACCORDANCE WITH REGULATIONS ADOPTED PURSUANT TO SECTION 3103.22 OF THE CODIFIED ORDINANCES, OR THE VIOLATIONS SET OUT BELOW SHALL BE CORRECTED BY COMPLETE REPAIR AFTER ALL REQUISITE PLANS AND SPECIFICATIONS HAVE BEEN SUBMITTED TO THE DIVISION OF BUILDING AND HOUSING, AND ALL REQUISITE PERMITS HAVE BEEN OBTAINED, ALL IN ACCORDANCE WITH THE CODIFIED ORDINANCES OF THE CITY OF CLEVELAND AND WITH THE OHIO BASIC BUILDING CODE.

[3] The notice included the administrative right to appeal to the Board of Zoning Appeals (BZA) and/or the Board of Building Standards and Building Appeals (local BBS/BA).

[4] Section 3103.09(e) of the Cleveland Building Code requires the Director of Building and Housing to provide notice of any building code violations to "the owner, agent or person in control of the building, structure, or portion and to any mortgagee of record[.]" There is no requirement that the notice be advertised or recorded.

2007. The notice, which was issued to Barnes, included a stop-work order for illegally constructing a second floor without proper approvals and permits. The notice informed Barnes of his administrative right to appeal, but he did not appeal this violation. In February, 2007, Barnes applied for approval to construct a second and third floor addition.

On March 15, 2007, the City instituted a criminal prosecution for the first-degree violation of Cleveland Codified Ordinances. After plea negotiations, the parties agreed to amend the case to be against Captain Buffalo, which entered a no-contest plea through Barnes, with a finding of guilt by the City Housing Court. As part of the agreement, Barnes and Captain Buffalo were to apply to the City to correct code violations at the Property. Barnes submitted the plans to the City's Department of Building and Housing in order to obtain construction permits and contracted with Captain Buffalo to construct a coffeehouse and business offices in the building. In April 2007, Barnes's February application was denied and Barnes appealed to the Board of Zoning Appeals (BZA).

On May 2, 2007, the City issued a building permit, but it was later withdrawn due to the 1998 violations notice. Barnes reapplied for building permits on October 18, 2007. On October 29, 2007, the BZA held a public hearing to review the denial of Barnes' February application building permit. The BZA sustained the denial on November 5, 2007. Barnes appealed the BZA's decision to the Cleveland Municipal Court and was ordered to file new applications for building permits and an additional zoning appeal. Barnes and Embassy then filed a Writ of Mandamus with the Court of Common Pleas that was later dismissed with prejudice in May of 2008.

On November 20, 2007, Barnes and Embassy applied for another building permit to construct a second floor. On December 5, 2007 the Department of Building and Housing denied

3

Barnes's and Embassy's November 2007 application for permit. After the City issued a notice of Non-Conformance, Barnes and Embassy appealed the denial to the BZA.

The BZA decided not to conduct a public hearing on the December 5, 2007 variance request based on the doctrine of res judicata. Barnes and Embassy filed another administrative appeal in May 2008, challenging the BZA's dismissal of the December 5, 2007 BZA decision on res judicata grounds. The City filed a motion to dismiss, which the Court of Common Pleas denied. Barnes and Embassy reapplied for building permits with changed plans in August 2008. The Building Department denied the permit, and Barnes and Embassy appealed the decision to the BZA. The BZA denied the August permit request based on res judicata.

In November 2008, Barnes and Embassy appealed the BZA's denial of the August permit application. Barnes also filed a motion for, and the common pleas court entered, a temporary restraining order (TRO) blocking demolition of the building.[5] On March 27, 2009, the parties agreed that Barnes would dismiss his request for injunctive relief and "file with the Board of Building Standards to resolve the demolition issue."

While Barnes was prosecuting his permit applications, Embassy filed an appeal with the local Board of Building Standards and Building Appeals (local BBS/BA) challenging the original 1998 commercial condemnation order. The local BBS/BA conducted public hearings in June and August 2009 and conducted a site inspection of the Property on August 3, 2009, at which time the building was determined to be continuing to deteriorate and in a state of disrepair. Following the final hearing on August 5, 2009, addressing both the condemnation and building permit issues, the local BBS/BA denied Embassy's appeal and remanded the matter to the Building Department for further proceedings. The local BBS/BA made its decision effective

---

[5]In February 2009, while the appeal from the denial of the third application was pending, Barnes filed a fourth permit application, which was denied immediately. The BZA affirmed the denial on March 23, 2009 on res judicata grounds and Barnes appealed.

4

immediately by way of an emergency resolution. The City began demolishing the Property, but Barnes obtained a TRO from the common pleas court in his pending appeal from the denial of his third permit application, and the demolition was halted. After an evidentiary hearing, the common pleas court granted the City's motion to dissolve the TRO on August 10th, and demolition resumed.

Barnes did not appeal the court's ruling on the TRO; however his appeals from the denial of his third and fourth applications remained pending, and on August 18, 2009, Barnes, on his own behalf and on behalf of Captain Buffalo, filed an appeal in the common pleas court from the local BBS/BA decision upholding the condemnation order. On December 10, 2009, after the building was demolished, the common pleas court vacated the BZA's decision denying the appeal of the denial of the third permit application on res judicata grounds, and remanded the matter to the BZA for decision on the merits. It does not appear that further proceedings took place on remand. On December 15, 2009, Barnes's appeal from the denial of his fourth application for a building permit was dismissed for failure to file a merits brief. On March 5, 2010, pursuant to Plaintiffs' notice of voluntary dismissal under OHIO R. CIV. P. 41(A), the common pleas court dismissed the appeal from the BBS/BA decision upholding the condemnation order. Thus, Plaintiffs abandoned their opportunity to obtain judicial review of the validity of the August 5, 2009 decision upholding the 1998 condemnation order

## II

We review a grant of summary judgment *de novo*, *Harris v. City of Akron*, 20 F.3d 1396, 1403 (6th Cir. 1993), as well as a grant of a motion to dismiss, *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2006). Plaintiffs' first argument, that the district court erred in granting summary judgment, will be discussed in the context of Plaintiffs' specific claims.

**A. Substantive Due Process**

Plaintiffs argue that the City demolished the Property as they were navigating the permit and application process and, by using the 1998 condemnation notice as the basis for the property's 2009 demolition, the City deprived them of their substantive due process rights.

Substantive due process guarantees that a person is not subject to "arbitrary or capricious" action by a state through its legislative or administrative process. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992). "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) [that was] caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). "This court has recognized two types of substantive due process violations: (1) official acts that are unreasonable and arbitrary and may not take place no matter what procedural protections accompany them, and (2) official conduct that shocks the conscience." *Harris*, 20 F.3d at 1405 (internal citations and quotations omitted).

Cleveland Codified Ordinance (CCO) § 3103.09(h)(1) provides:

> In case the owner, agent or person in control fails, neglects, or refuses to comply with the notice to repair or rehabilitate, or to demolish and remove a public nuisance or unsafe building, structure or a portion of those, the Director may take appropriate action to demolish and remove an unsafe structure or to remove or abate any condition that is defined as a nuisance under this chapter.

Ohio R.C. § 715.26 authorizes a City to provide for the demolition of an unsafe structure that is a public nuisance if the owner fails to provide the notice to repair, rehabilitate or demolish the structure. The demolition of a nuisance is not an unreasonable and arbitrary official act that may not take place no matter what procedural protections accompany it. Rather, it is an official act taken by municipalities across the country. Plaintiffs argue that the demolition here shocks the

6

conscience because they were in the process of trying to improve the building, and had appeals pending, when it was demolished based on a 1998 notice of violation. However, absent a court order, the City had no obligation to await the result of the permit application proceedings where it proceeded on the separate issue whether the building constituted a public nuisance. The City's actions did not, as a matter of law, "shock the conscience." *See Harris*, 20 F.3d at 1405 ("So far as we know, or have been informed, no court has held that it shocks the conscience for municipal authorities, acting pursuant to an unchallenged ordinance, to order the destruction of a building found by responsible officers to be a nuisance or threat to public health or safety.").

The district court properly granted summary judgment on the substantive due process claim.

## B. Takings Claim

Plaintiffs argue that the issue whether the Property was properly declared a nuisance had not been fully heard because, while Plaintiffs were litigating the issue whether the 1998 condemnation was proper, they were diverted by the City into the zoning appeals process and by the time the Ohio Court of Appeals overruled the BZA's refusal to hear argument on grounds of res judicata, the Property had been demolished pursuant to the 1998 condemnation order.

Plaintiffs argue that the trial court did not address their argument that had the BZA heard their appeal, it likely would have granted them a variance since they had changed their plans significantly in order to pass BZA scrutiny. Plaintiffs also suggest that the Building Department would have granted the building permit that would have allowed them to refurbish the building, making the condemnation moot since they would have remedied the ordinance violations.

The United States and Ohio Constitutions prohibit the taking of private property for public use without just compensation. However, such compensation is not mandated when the

7

state legitimately exercises police power to abate a property nuisance. *Davet v. City of Cleveland*, 456 F. 3d 549, 553 (6th Cir. 2006).

> Under the police power society may restrict the use of property without making compensation therefor, if the restriction be reasonably necessary for the preservation of the public health, morals, or safety. This is so, because all property within the state is held subject to the implied condition that it will be so used as not to injure the equal right of others to the use and benefit of their own property.

*Pritz v. Messer*, 149 N.E. 30, 33 (Ohio 1925), *disapproved of on other grounds by Village of Hudson v. Albrecht, Inc.*, 458 N.E.2d 852 (Ohio 1984).

Plaintiffs make much of the age of 1998 commercial condemnation order. It well may be that the sudden demolition of a structure pursuant to an eleven-year old order would constitute an unconstitutional taking. But that is not what took place here. The City had the authority to demolish the Property to abate a nuisance and Plaintiffs had ample notice and opportunity to challenge the City's intended action. Plaintiffs were granted a public hearing at which they were represented by counsel. Rather than abate the nuisance, Plaintiffs continued to attempt to improve the property. Plaintiffs arguments regarding what the BZA and Building Department might have done are hypothetical and "[c]onstitutional questions are not to be decided hypothetically." *Ryan v. State of Tennessee*, 257 F.2d 63, 64 (6th Cir. 1958). Finally, Plaintiffs failed to complete the administrative appeal process, which although still pending when the building was demolished, could nevertheless have resulted in a reversal of the findings underlying the condemnation order.

## C. Fourth Amendment Search and Seizure

Plaintiffs argue that even if probable cause existed for Defendants to believe the Property constituted a nuisance that required abatement, Defendants still had no right to enter the Property or seize it without a warrant. Plaintiffs properly cite *Michigan v. Taylor*, 436 U.S. 499, 504-07

(1978), as supporting the proposition that entry to locate and abate a known nuisance falls within the warrant requirement of the Fourth Amendment. However, here the entry was not to locate and abate a nuisance within the property, but to demolish the property that was already determined to be a nuisance. Our research yielded no Sixth Circuit decision on point, but several circuits have held that a warrantless entry to abate a nuisance after the entry of remedial orders does not violate the Fourth Amendment provided such entry does not invade a constitutionally-protected privacy interest. *See Freeman v. City of Dallas*, 242 F.3d 642, 651 (5th Cir. 2001) (holding that warrantless demolition of a nuisance property was not per se unreasonable where landowners availed themselves of two hearings that resulted in a decision of a panel, and after these proceedings, there remained a possibility of state court judicial review); *Hroch v. City of Omaha*, 4 F.3d 693, 697 (8th Cir. 1993) (where the plaintiff petitioned for state court review of the condemnation order and sought a temporary injunction preventing demolition, which was denied, the defendants' actions in implementing the City's condemnation order did not constitute an unreasonable seizure in violation of the plaintiff's Fourth Amendment right); *see also Jamison v. Angelo*, No. 4:10CV2843, 2012 WL 4434152, at *9-10 (N.D. Ohio Sept. 24, 2012).

During the City's August 2009 inspection, the Property was observed as continuing to deteriorate and in a state of disrepair. On August 5, 2009, the local BBS/BA declared the Property an "emminent [sic] danger and peril to human life and public health, safety and welfare, and that the aforesaid condition constitutes an emergency." Barnes had been afforded adequate due process relating to the condemnation proceedings and, therefore, the warrantless entrance on the Property to remediate the established nuisance was reasonable under the Fourth Amendment.

Within their Fourth Amendment argument, Plaintiffs quote extensively from *Englewood v. Turner* (*Turner II*), 897 N.E.2d 213 (Ohio App. 2008), asserting that under Ohio law the City

9

demolished the Property at its peril and must know show that the Property actually constituted a nuisance. *Turner II* is distinguishable. In Turner's first appeal, the Ohio court concluded that Englewood's nuisance abatement procedures did not satisfy due process requirements and that the appeal provided did not constitute an administrative remedy such that Turner was required to appeal to exhaust her administrative remedies challenging the finding of a nuisance. *Englewood v. Turner,* 858 N.E.2d 431 (Ohio App. 2006) (*Turner I*). In her second appeal, after remand, the Ohio court cited *Holtz v. Toledo,* No. L-05-1217, 2006 WL 1793684 (Ohio App. Jun. 30, 2006), and held that notice that the city would abate the nuisance if Turner failed to do it herself was inadequate notice of an intent to demolish; and further determined that "there has never been a judicial determination of a public nuisance, nor did Turner have an opportunity to be heard at an administrative level with a judicial review of whether a public nuisance existed." *Turner II*, 897 N.E.2d at 191. Unlike Turner, Plaintiffs received notice that the City intended to condemn the Property, rather than abate the nuisance, an administrative hearing, and the opportunity for judicial review. The instant case is more analogous to *Davet*, 456 F.3d at 552, where this court concluded the district court properly gave preclusive effect to the unappealed determination of the state administrative body that the property constituted a nuisance. Thus, the district court properly granted summary judgment on the Fourth Amendment claim.

For these reasons, we AFFIRM.